IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| DEBORAH L. HUGHES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:18-cv-00087-BP |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Deborah L. Hughes ("Hughes") filed this action under 42 U.S.C. § 405(g) seeking judicial review of the unfavorable decision by the Commissioner of the Social Security Administration ("Commissioner") regarding her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") and application for supplemental security income ("SSI") under Title XVI of the SSA. (ECF Nos. 1, 15). After considering the pleadings, briefs, and the administrative record, the Court **AFFIRMS** the Commissioner's decision.

**I.      STATEMENT OF THE CASE**

Hughes applied for DIB and SSI on September 3, 2015, alleging disability based on bipolar disorder, asthma, neuropathy, and lower back pain. (Tr. 186-96, 225). The Commissioner initially denied her DIB and SSI application and on reconsideration on April 5, 2016. (Tr. 54-145). Hughes timely filed a request for a hearing before Administrative Law Judge ("ALJ") Douglas S. Stults. (*Id.*). Hughes attended and testified at the ALJ hearing on January 11, 2017 in Lawton, Oklahoma. (Tr. 10, 29-53). Also present at the hearing was Hughes' attorney and a vocational expert ("VE").

1

(Tr. 29-53). On June 23, 2017, the ALJ rendered a decision finding that Hughes was not disabled. (Tr. 7-28).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Hughes had not engaged in substantial gainful activity since December 19, 2015. (Tr. 12). At step two, the ALJ determined that Hughes had the severe impairments of chronic obstructive pulmonary disease, obesity, and bipolar disorder. (Tr. 13). At step three, the ALJ found that Hughes' impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (*Id.*). The ALJ concluded that Hughes retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with excepted limitations. (Tr. 15). At step four, the ALJ determined that Hughes was unable to perform her past relevant work. (Tr. 21). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that Hughes could perform. (*Id.*).

The Appeals Council denied review on April 23, 2018. (Tr. 7-9). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to Hughes' pleadings, testimony at the administrative hearing, and the administrative record, Hughes was 50 years old on the alleged disability onset date of June 25, 2015, and 53 years old at the time of the administrative hearing. (Tr. 21, 33). On January 11, 2017, Hughes amended her alleged disability onset date to December 19, 2015. (Tr. 12, 220). She completed a high school education and her employment history includes work as a delicatessen

worker. (Tr. 34, 49). Hughes asserts that her physical and mental impairments render her disabled under the SSA.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(g). "The claimant bears the burden of

showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV. ANALYSIS

Hughes raises two issues on appeal. She claims that the ALJ erred in failing "to include in his hypothetical questioning of the [VE] all of . . . [her] limitations that he accepted as true" and "to . . . determin[e] . . . whether [she] could maintain employment." (ECF No. 15 at 1).

### A. The ALJ's Hypothetical Question to the VE does Not Constitute Reversible Error.

Hughes argues that the ALJ relied upon the VE's hearing testimony as substantial evidence that there are a significant number of jobs in the U.S. economy that she could perform. (ECF No. 15 at 11). For this testimony to serve as substantial evidence, Hughes asserts that the ALJ had to pose hypothetical questions to the VE that encompassed "all limitations of the claimant [that he] recognized . . . ." (*Id.* at 12). Hughes argues that the ALJ's failure to encompass all of her limitations when questioning the VE constitutes reversible error. (*Id.*).

The ALJ assessed Hughes with an RFC in which she could perform "light work," except that she could "have no more than incidental, superficial work-related type contact with the *general public*, *co-workers*, and *supervisors* . . . ." (Tr. 15) (emphasis added). But when the ALJ questioned the VE at the hearing, he only inquired as to whether any jobs existed for individuals who could "have no more than incidental or superficial work-related type contact with the *general public . . . .*" (Tr. 49-50). The ALJ's RFC finding and hypothetical question thus differed in that the former included "the general public," "co-workers" and "supervisors" while the latter included only "the general public." (ECF No. 15 at 12-14). Thus, Hughes avers that the ALJ's hypothetical question was defective and constitutes reversible error.

Hughes correctly cites *Bowling v. Shalala* for the proposition that in relying on the VE's testimony, the Commissioner must prove that the ALJ posed hypothetical questions to the VE that "reasonably incorporates the disabilities recognized by the ALJ." 36 F.3d 431, 435 (5th Cir. 1994) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)). The Fifth Circuit articulated a test in *Morris* to determine whether an ALJ's hypothetical question is defective.

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any

5

purported defects in the hypothetical questions . . . a determination of non-disability based on such a defective question cannot stand.

*Bowling*, 36 F.3d at 436 (citing *Morris*, 864 F.2d at 336).

The *Bowling* facts, however, differ greatly from the current suit. In *Bowling*, the ALJ found that the claimant's RFC limited his physical exertion requirements to "no lifting of more than 20 pounds." *Bowling*, 36 F.3d at 436 (internal quotations omitted). But, the ALJ's question to the VE "assumed that [the claimant] 'could occasionally lift and carry 50 pounds' and 'could frequently lift and carry 20 pounds.'" *Id.* The Fifth Circuit found that the ALJ's hypothetical question was a misrepresentation of the claimant's disabilities and the ALJ's RFC finding and was unsupported by the medical evidence of record. *Id.* at 436-37.

Here, the ALJ's hypothetical question to the VE reasonably incorporated all of the claimant's disabilities that he recognized because he broadly referenced incidental or superficial work-related type contact with the "general public." The terms "general public" reasonably incorporates Hughes' hypothetical "co-workers" and "supervisors" even though the ALJ did not specifically reference the latter terms in his questioning, but included them in his RFC finding. Because there is not a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision," the Court finds that no reversible error was committed as to this point. *Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010).

Moreover, the ALJ's hypothetical question did not assume that Hughes could perform greater or more demanding activity than his RFC finding provided, unlike the ALJ's questioning in *Bowling*. Hughes also was afforded a reasonable opportunity to correct the ALJ's hypothetical question to the VE during cross-examination if she thought it was defective. Hughes could have cross-examined the VE about the limited contact she would need to have with hypothetical "co-

workers" or "supervisors," given her personal understanding of her bipolar disability, and how this scenario might negatively impact her ability to sustain gainful employment. Instead, Hughes only cross-examined the VE about her required use of "a small oxygen bottle . . . at a worksite" and whether "that type of accommodation [would] be readily available on the jobs [the VE] identified as other work." (Tr. 51). The Court finds that Hughes was afforded a reasonable opportunity to correct what she thought was a defective hypothetical question posed by the ALJ.

And as the Commissioner points out, the *Dictionary of Occupational Titles* ("*DOT*") defines two of the jobs identified by the VE (mail sorter and mail clerk) (Tr. 50) as involving no more than incidental/superficial interaction with "*co-workers*" and "*supervisors*." *See* Mail Sorter, *DOT* 222.687-022, 1991 WL 672133 (emphasis added) and Mail Clerk, *DOT* 209.687-026, 1991 WL 671813 (emphasis added). By contrast, Hughes argues that a vocational specialist, Paula F. Santagati, provided convincing evidence that the jobs identified by the VE in this suit would preclude Hughes from sustaining gainful employment because "a limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." (*See* ECF No. 15 at 13; ECF No. 15-1 at 2) (internal quotations omitted).

It has long been the law, however, that the Social Security Regulations "allow the ALJ to use the *DOT*." *See Walker*, No. 7:16-CV-00150-O-BP, 2017 WL 6883894 at *5 (N.D. Tex. Dec. 19, 2017) (citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2)). "Use of the *DOT* is widespread in Social Security cases in all circuits of the federal judiciary." *Walker*, 2017 WL 6883894 at *5 (citing *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (collecting the positions of the circuit courts on the amount of authority accorded to the DOT against contrary VE testimony); *see also Hernandez v. Astrue*, No. A-06-CA-416 LY, 2007 WL 1746896, at *3 (W.D. Tex. June 15,

2007) (referring to the DOT as "the standard reference guide") and *Gillespie v. Astrue*, No. 1:13-CV-00219, 2014 WL 1168872, at *11 (W.D. La. Mar. 21, 2014) ("VEs typically use the Dictionary of Occupational Titles published by the Department of Labor, the Standard Occupational Classification system published by the Department of Labor, and census reports published by the Bureau of Census . . .").

Even assuming *arguendo* that Ms. Santagati's opinion is persuasive, it "has not been designated as an acceptable source under the Social Security Regulations, and the court is not at liberty to substitute its judgment for those regulations." *Walker*, 2017 WL 6883894 at *5 (internal quotations omitted) (citing *New v. Comm'r of SSA*, No. 4:13-CV-00130SAA, 2014 WL 7361602, at *9 (N.D. Miss. Dec. 23, 2014)). In relying upon the VE's testimony concerning jobs described by the *DOT* that align with Hughes' disability limitations as support for his RFC finding, the ALJ did not err when he limited Hughes' RFC to "no more than incidental, superficial work-related type contact with the *general public*, *co-workers*, and *supervisors* . . . ." (Tr. 15) (emphasis added).

For these reasons, the Court concludes that the ALJ did not ask a defective hypothetical question to the VE that constitutes reversible error.

**B. The ALJ did Not Err in Failing to Determine whether Hughes' Respiratory Disability Prevented Her from Maintaining Substantial Gainful Activity**.

Hughes argues that the ALJ erred in not determining whether she was able to maintain employment. (ECF No. 15 at 14).

In determining "that a claimant is able to engage in substantial gainful activity[,] [the ALJ must also determine whether] the claimant can find employment and . . . hold whatever job [s]he finds for a significant period of time." *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2012). The Fifth Circuit, however, explained in *Heck v. Colvin* that the ALJ is not required to make a *Watson* "finding regarding the claimant's ability to maintain employment in every case." 674 F. App'x

8

411, 416 (5th Cir. 2017) (internal quotations omitted) (citing *Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (quoting *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003))). To trigger *Watson's* requirement "for a finding on ability to maintain employment," the "claimant must allege more than mere pain variation." *Heck*, 674 Fed. Appx. at 416. "[H]er condition [must prevent] her from maintaining employment" because "she can only work in short spurts or is beset by intensified symptoms at regular intervals." *Id.*

Here, the evidence does not reflect that Hughes' disabilities required the ALJ to make a separate finding regarding her ability to maintain substantial gainful activity. Hughes alleges in her pleadings that her respiratory problems are "beset by intensified symptoms at regular intervals," which is why the ALJ should have made a finding as to her ability to maintain substantial gainful activity. (ECF No. 15 at 14-18). Hughes, however, did not testify to this effect at the hearing. Instead, she stated that her "biggest problem . . . at th[at] point" was her "legs and . . . back." (Tr. 36).

Furthermore, the record reflects that Hughes' respiratory problems were not so persistent as to prevent her from driving a vehicle five days per week to take her grandchildren to and from school; attend their extracurricular activities; and go to doctors' appointments, the post office, the bank, the pharmacy, gas stations, and convenience and grocery stores. (Tr. 42-43). The record further indicates that despite her respiratory problems, Hughes can feed, change, bathe, clothe, and diaper her three-year-old grandson, perform household chores, look after her six pet dogs, and manage her finances. (Tr. 43-44, 45, 46).

Lastly, Hughes' self-reports on her respiratory problems are not entirely consistent. For example, on January 5, 2016, she reported that her asthma was causing breathing issues and that as a result, she used her breathing machine three times per day. (Tr. 919). On May 11, 2016,

however, Hughes denied having shortness of breath, wheezing, chest colds, and sputum, but reported coughing. (Tr. 869). On that same date, Hughes denied palpitations and chest pains. (*Id.*).

Given this evidence, the ALJ could conclude that Hughes' respiratory disability did not "wax" and "wane" in such a persistent fashion as to have required a finding on her ability to maintain substantial gainful activity. *Thornhill v. Colvin*, No. 3:14-CV-M, 2015 WL 232844, at * (N.D. Tex. Jan. 16, 2015). Intead, Hughes' claims involving her respiratory disability amounts to "mere pain variation." *Heck*, 674 F. App'x at 416. Thus, the ALJ did not err as to this issue.

## V. CONCLUSION

The ALJ did not err when posing a hypothetical question to the VE that reasonably incorporated all of Hughes' limitations. The ALJ also did not err when he did not determine whether Hughes could maintain substantial gainful activity because he was not required to do so. Thus, after considering the pleadings, briefs, and the administrative record, the Court concludes that the ALJ properly applied correct legal standards, and substantial evidence supports his decision. The Court therefore **AFFIRMS** the Commissioner's decision.

**SIGNED February 13**, **2019**.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE